IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| **In re:** | * | |
| **Duck Neck Campground, L.L.C** | * | **Case No.: 15-15973-TJC** |
| | | (Chapter 11) |
| Debtor | * | |
| * * * * * * | * | * * * * |
| **In re:** | * | |
| **WBR Investment Corporation** | * | **Case No.: 15-15982-TJC** |
| | | (Chapter 11) |
| Debtor | * | |
| * * * * * * | * | * * * * |

**EMERGENCY MOTION OF DEBTORS FOR ENTRY OF INTERIM
AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL**

WBR Investment Corporation ("WBR") and Duck Neck Campground, L.L.C ("Duck Neck"), Debtors and Debtors-in-Possession (collectively the "Debtors"), by undersigned counsel, and pursuant to § 363 of the United States Bankruptcy Code (the "Bankruptcy Code"), move for entry of an order authorizing the Debtors to use cash collateral as described below and in the attached proposed order. In support, the Debtors state as follows:

**Jurisdiction and Venue**

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157.

2. The relief sought in this Motion is based on § 363 of the Bankruptcy Code.

**Background**

3. On April 27, 2015, WBR and Duck Neck each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"), and, pursuant to §§ 1107 and

#2416341v.1

1108 of the Bankruptcy Code, have each continued in the possession of their property and management of their businesses as Debtors-in-Possession.

4. WBR owns approximately 90 acres of campground located at 500 Double Creek Point Road, Chestertown, Maryland (the "Property"), on which Duck Neck operates a campground and trailer park, with approximately 300 trailer sites, water and electrical hookups, and sewer connections for its RV visitors. The Property is located partially on the Chester River and partially on Rabbit Creek, and contains all amenities necessary to provide its customers with a comfortable experience, including: a waterfront dwelling, a tenant dwelling, a camp store, a swimming pool, bath houses, pavilions, piers, a boat ramp and a maintenance shop.

5. Duck Neck's business that is operated on the Property is seasonal, and operates between March and November. Other than tent camping and use of seasonal amenities, the campground is non-operational between October and February. The campground business yields approximately $1 million in gross annual income, with a substantial portion of the income collected by Duck Neck from visitors paying for use in advance of the season.

6. WBR and Duck Neck are both solely owned by Wilson B. Reynolds ("Reynolds"). The instant bankruptcy petitions of the Debtors were precipitated by a complaint for the appointment of a receiver (the "Complaint") filed by the Debtors' primary secured creditor, PNC Bank, N.A. ("PNC")[1] in the United States District Court for the District of Maryland. Pursuant to § 362 of the Bankruptcy Code, the Complaint is stayed by virtue of the Chapter 11 filings by the Debtors.

---

[1] It is acknowledged that PNC has a lien on WBR's cash, but based upon a cursory review of the PNC loan documents, the Debtors do not believe that PNC has a lien on Duck Neck's cash.

7. PNC has asserted a first priority lien and security interest on the Property, as well as the Property's improvements and all of WBR's other assets and property, securing a loan made to Reynolds and Duck Neck as co-borrowers.

8. Prior to the filing of the Complaint, in January 2013, PNC obtained judgments against Duck Neck, WBR and Reynolds, among other related entities, in the amount of $5,315,140.27 plus interest (the "Judgment"). In connection with the Judgment, PNC has commenced collection efforts, including garnishments of property.

**Prepetition Secured Debt**

9. On March 9, 2009, as evidenced by a promissory note bearing the same date, PNC made a loan to Reynolds and Duck Neck, as co-borrowers, in the original principal amount of $4,250,000.00 (the "First Loan"), which promissory note is attached hereto as **Exhibit 1**.

10. PNC asserts that the First Loan is secured by the following:

(a) A first priority lien and security interest in the Property, as evidenced by an Indemnity Deed of Trust, Assignment and Security Agreement dated March 9, 2009, by grantor WBR, and recorded in the Land Records of Wicomico County, Maryland ("Land Records") at Liber 1866, Folio 746 (the "Property IDOT"), attached hereto as **Exhibit 2**;

(b) An assignment of the leases, rents, issues and profits from the Property, with a reservation of a license to WBR to collect, retain and use the rents, issues and profits until occurrence of default, also evidenced by the Property IDOT;

(c) A first priority lien and security interest in approximately 38 acres located on Johnson Road, Salisbury, Maryland (the "Reynolds Residence"), as evidenced by a Deed of Trust dated March 9, 2009, by grantor Reynolds, and recorded in Land Records at Liber 3031, Folio 202 (the "Reynolds Resident DOT"), attached hereto as **Exhibit 3**;

(d) Liens and security interests in two other parcels of land situated in Salisbury, Maryland, and owned by CDC Investment Corp., and LNIC-MD, LLC, respectively, which are both entities that share common ownership with the Debtors;

11. PNC also asserts that it is secured by a priority blanket lien and security interest in all personal property owned by the Debtors. However, the Debtors are currently investigating whether PNC is properly secured, and has perfected its security interest in one or both of the Debtors' personal property. WBR owns no significant personal property.

12. On December 15, 2009, PNC made a loan to WBR and Reynolds, which was subsequently modified and restated to reflect a principal loan amount of $593,046.14, as evidenced by a Promissory Note dated December 15, 2009 and a First Amended and Restated Promissory Note dated July 27, 2010, which are attached hereto as **Exhibit 4** (the "Second Loan").

13. PNC alleges that the Second Loan is secured by the same collateral as the First Loan.

14. As further evidenced by the Judgment, collection actions, and Complaint, PNC asserts that WBR and Reynolds are in default of the Loans.

15. Upon information and belief, no other person has a lien on the Debtors' cash.

### Relief Requested

16. By this Motion, the Debtors request entry of an order pursuant to § 363(c) of the Bankruptcy Code (i) scheduling a hearing as soon as the Court's calendar will allow to consider entry of an order authorizing and approving the Debtors' use of Cash Collateral (as defined in Section 363(a) of the Bankruptcy Code) on an interim basis; (ii) authorizing the Debtors to use the Cash Collateral of PNC on an interim basis through May 14, 2015, in an amount not to exceed $10,000; (iii) scheduling a hearing on or before May 14, 2015 to consider entry of an order authorizing and approving the Debtors' use of Cash Collateral on a final basis; and (iv) authorizing the Debtors to use the PNC's Cash Collateral on a final basis.

17. The Debtors require use of the Cash Collateral to fund operations while the Debtors reorganize. Without use of the Cash Collateral, the Debtors will be unable to purchase inventory from its vendors to stock Duck Neck's campground store, to fund payroll, and to pay other ordinary and recurring operating expenses, which will result in the Debtors being forced to liquidate. To prevent such liquidation, the Debtors request approval of the use of Cash Collateral. Furthermore, the Debtors respectfully submit that they will suffer substantial, immediate and irreparable harm if relief is not granted on an interim basis.

18. As adequate protection for the Secured Lenders, the Debtors propose the following:

   a. The Debtors shall place any and all cash, checks or monies it collects, receives or derives from its business operations or the use of the Cash Collateral into the Debtor's debtor-in-possession bank account(s), which shall be maintained at a bank approved by the Office of the U.S. Trustee.

   c. The Debtors shall use the Cash Collateral to pay only reasonable and necessary operating expenses incurred in the ordinary course of the Debtors' business, not to exceed the total amount of $10,000, which expenses shall be identified in a two-week budget provided by the Debtors to PNC, and which shall be provided to the Court prior to approval of any interim or final order approving the relief requested herein.

   d. PNC shall receive replacement liens, pursuant to § 361(2) of the Bankruptcy Code, in and to all property of the estates of the kind presently securing repayment of the Debtors' prepetition obligations to PNC (the "Postpetition Collateral") to the extent of any decrease or diminution in the value of PNC's interest in their prepetition collateral (the "Prepetition Collateral"), with such liens attaching to the Postpetition Collateral to the same extent and in the same priority as such liens exist on the Prepetition Collateral as of the Petition Date.

   e. The replacement liens and security interests granted herein are valid, enforceable and fully perfected, and no further filings or recordation or other act in accordance with any applicable local, state or federal law, rule or regulation are necessary to create or perfect such liens and security interests. Notwithstanding the above, the Debtors shall cooperate with PNC to execute such documents and instruments and do such other things as PNC reasonably requests to evidence and perfect such replacement liens and security interests, and the automatic stay is hereby modified to

      f.    allow PNC to file such financing statements and other documents as it may deem necessary to perfect the liens and security interests granted herein.

      f.    PNC shall have an allowed claim against the Debtors, which claim shall have priority over all other administrative expenses allowable against the Debtors under Section 507(b) of the Bankruptcy Code, to the extent that any part of the Cash Collateral is used by the Debtors for purposes not permitted by this Order or to the extent that the value of PNC's Prepetition Collateral diminishes during the course of this case; provided, however, that the amount of any claim awarded pursuant to this paragraph shall be subject to determination by the Court upon proper notice and the opportunity for hearing.

      g.    Upon request by PNC, the Debtors shall provide PNC with a compliance report (in the same form as the budget) that documents the Debtors' actual use of cash during the period covered by the budget as to each budget line item.

19. The Debtors served this Motion and a notice of hearing on the following parties by facsimile, electronic mail or hand delivery: (a) the Office of the United States Trustee; (b) the Secured Lenders; (c) the 20 largest unsecured creditors; and (d) any other parties who have requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no further notice is required.

WHEREFORE, for the reasons set forth above, the Debtors request that the Court enter an order:

A.    Scheduling a hearing as soon as the Court's calendar will allow to consider entry of an order authorizing and approving the Debtors' use of Cash Collateral on an interim basis;

B.    Authorizing the Debtors' use of Cash Collateral pursuant to Section 363(c) of the Bankruptcy Code on an interim basis through May 14, 2010;

C.    Scheduling a hearing on or before May 14, 2010 to consider entry of an order authorizing and approving the Debtors' use of Cash Collateral on a final basis;

D. Authorizing the Debtors' use of Cash Collateral pursuant to Section 363(c) of the Bankruptcy Code on a final basis;

E. Determining that the proposed terms in paragraph 18 above adequately protect the interests of the Secured Lenders as required by Section 361 of the Bankruptcy Code; and

F. Granting such other and further relief as is just and appropriate under the circumstances.

Dated: April 28, 2015

/s/ Alan M. Grochal
Alan M. Grochal, Bar No. 01447
Catherine K. Hopkin, Bar No. 28257
Tydings & Rosenberg LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland  21202
Telephone (410) 752-9700
agrochal@tydingslaw.com
chopkin@tydingslaw.com

*Proposed Counsel for the Debtors*